UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BUSTOS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | No. 2:13-cv-0229 TLN DAD<br><br>FINDINGS AND RECOMMENDATIONS |

       This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, it is recommended that plaintiff's motion be granted, defendant's cross-motion be denied, the decision of the Commissioner of Social Security (Commissioner) be reversed, and that the matter be remanded for further proceedings consistent with these findings and recommendations.

PROCEDURAL BACKGROUND

       On March 31, 2006, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income (SSI) under Title XVI of the Act, alleging disability beginning on July 1, 1988. (Transcript ("Tr.") at 215-17.) Plaintiff's application for benefits was denied initially and upon

reconsideration. (Id. at 113-16.) A hearing was held before an Administrative Law Judge (ALJ) on March 4, 2008. (Id. at 58.) Plaintiff was represented by counsel and testified at the administrative hearing. In a decision issued on June 24, 2008, the ALJ found that plaintiff was not disabled. (Id. at 117.)

However, on May 29, 2009, the Appeals Council granted review and remanded the case back to the ALJ. (Id. at 133-35.) On May 5, 2010, the ALJ held a post remand hearing. (Id. at 35.) Plaintiff was represented by counsel and testified at the post remand hearing. In a decision issued on August 13, 2010, the ALJ again found that plaintiff was not disabled. (Id. at 14-33.)

The ALJ entered the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since July 1, 1988, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disks, lumbar spine; obesity; diabetes; depression; history of alcohol abuse, in remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift 20 pounds occasionally and 10 pounds frequently; capable of standing, sitting, and walking for 6 hours each in a work day; cannot climb ladders/ropes/scaffolding; cannot work at heights or around hazardous, moving machinery; should not have concentrated exposure to dust, fumes, smoke, or other respiratory irritants; and is limited to work involving simple instructions.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 23, 1955 and was 32 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date, July 1, 1988. The claimant was 49 years old as of the previous decision of May 12, 2005 (Exhibit 2A),

and was still a younger individual. The claimant subsequently changed age category to "closely approaching advanced age" on August 22, 2005 (20 CFR 404.1563 and 416.963).

8. The claimant has "limited" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 1988, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 20-28.)

On February 29, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 2, 2012.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of

3

1    supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

2    substantial evidence supports the administrative findings, or if there is conflicting evidence

3    supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

4    Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

5    improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

6    1335, 1338 (9th Cir. 1988).

7               In determining whether or not a claimant is disabled, the ALJ should apply the

8    five-step sequential evaluation process established under Title 20 of the Code of Federal

9    Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

10   The five-step process has been summarized as follows:

11            Step one:  Is the claimant engaging in substantial gainful activity?
              If so, the claimant is found not disabled.  If not, proceed to step
12            two.

13            Step two:  Does the claimant have a "severe" impairment?  If so,
              proceed to step three.  If not, then a finding of not disabled is
14            appropriate.

15            Step three:  Does the claimant's impairment or combination of
              impairments meet or equal an impairment listed in 20 C.F.R., Pt.
16            404, Subpt. P, App. 1?  If so, the claimant is automatically
              determined disabled.  If not, proceed to step four.
17
              Step four:  Is the claimant capable of performing his past work?  If
18            so, the claimant is not disabled.  If not, proceed to step five.

19            Step five:  Does the claimant have the residual functional capacity
              to perform any other work?  If so, the claimant is not disabled.  If
20            not, the claimant is disabled.

21   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

22              The claimant bears the burden of proof in the first four steps of the sequential

23   evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

24   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

25   (9th Cir. 1999).

26                                            APPLICATION

27              In his pending motion plaintiff argues that the ALJ committed the following four

28   principal errors in finding him not disabled:  (1) the ALJ erred with respect to evaluating the

4

medical opinion evidence; (2) the ALJ erred at step five of the sequential evaluation by failing to identify jobs that plaintiff could perform; (3) the ALJ erred in failing to apply the higher grid rule in a borderline age case; and (4) the ALJ erred with respect to evaluating plaintiff's mental functioning.

I.  **Medical Opinion Evidence**

Plaintiff argues that the ALJ erred with respect to his treatment of the medical opinion evidence. (Pl.'s MSJ (Doc. No. 22) at 6-8.[1]) Specifically, plaintiff argues that the ALJ tacitly rejected some of the limitations indicated by the medical opinions of Drs. Theodore Georgis, Joseph Garfinkel and J. E. Thornburg. (Id.)

With respect to Dr. Georgis, the ALJ's decision reads as follows:

> A comprehensive Orthopedic Evaluation and Medical Source Statement of Ability to Do Work-Related Activities (Physical) were completed by Theodore Georgis, Jr., M.D., and dated September 14, 2009 (Exhibit 14F). The claimant was diagnosed with chronic low back pain and probable underlying degenerative disc disease, without radiculopathy (Exhibit 14F10). Dr. Georgis provided the following functional assessment:
>
>> From my assessment of this claimant, I do feel his condition will impose limitations for 12 continuous months.
>>
>> Maximum standing and walking capacity, up to six hours. Maximum sitting capacity, up to six hours.
>>
>> Assistive devices, the claimant uses a single point cane, which is not medically necessary based upon my objective exam findings.
>>
>> Maximum lifting and carrying capacity, 20 pounds occasional and 10 pounds frequently.
>>
>> Postural limitations, limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling, secondary to his back condition.
>>
>> Manipulative limitations, none.
>>
>> Workplace environmental limitations, none.
>
> (Exhibit 14F10-11, see also 14F1-6). I give some weight to these

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

>     findings because they were the result of an in-person evaluation and
>     Dr. Georgis is orthopedics board certified. I find, however, that the
>     claimant has more postural and environmental restrictions than
>     indicated by Dr. Georgis.

(Id. at 26-27.)

With respect to Dr. Garfinkle's opinion, the ALJ stated in his decision the following:

>     A Complete Internal Medicine Evaluation was performed by Joseph
>     Garfinkel, M.D., and dated August 10, 2006 (Exhibit 3F). The
>     claimant's chief complaints were back injury, diabetes, asthma,
>     high blood pressure, and sleep apnea (Exhibit 3F1). The evaluation
>     noted impressions of lower back injury with radiculopathy; diabetes
>     mellitus type II; asthma, stable; hypertension, poor control
>     (claimant was advised to see his physician about his blood
>     pressure); sleep apnea; and anxiety and depression (which should
>     be evaluated by a psychologist or psychiatrist) (Exhibit 3F5). Dr.
>     Garfinkel provided the following medical source statement:
>
> >     The claimant can lift 20 pounds occasionally and 10
> >     pounds frequently. He can stand or walk six hours
> >     in an 8-hour day. He can sit six hours in an eight-
> >     hour day. He must periodically alternate standing
> >     and sitting to relieve pain and discomfort every two
> >     hours. He can occasionally climb, stoop, kneel or
> >     crouch.
>
>     (Exhibit 3F5). I give some weight to these findings because they
>     are the result of an in-person examination with physical testing and
>     are contained in a thorough and detailed report. In addition, Dr.
>     Garfinkel is board eligible, internal medicine.

(Id. at 25.)

Finally, with respect to Dr. Thornburg's opinion rendered September 11, 2006, the ALJ's opinion acknowledged that on September 11, 2006, a "Physical Residual Functional Capacity Assessment was prepared by a Social Security Administration medical consultant," which determined that, among other limitations, plaintiff could "occasionally . . . balance, stoop, kneel, crouch and crawl . . ." (Id.) The ALJ gave "some weight" to that opinion, but found "that the claimant has more postural and environmental restrictions than indicated" by Dr. Thornburg. (Id. at 25-26.)

Despite the fact that the ALJ's decision did not reject any of the limitations found by the opinions of Drs. Georgis, Garfinkel or Thornburg, the ALJ's Residual Functional Capacity

("RFC") determination did not account for all of the limitations indicated by the doctors' opinions. Specifically, the ALJ's RFC determination set no limitation on plaintiff's ability with respect to kneeling, stooping, balancing, crouching or crawling, despite the fact that Dr. Georgis and Dr. Thornburg both opined that plaintiff was limited to only occasional kneeling, stooping, balancing, crouching and crawling, and that Dr. Garfinkel opined that plaintiff could only occasionally stoop, kneel or crouch. Moreover, the ALJ's RFC determination did not include a limitation reflecting that plaintiff needed to alternate standing and sitting every two hours, despite the fact that Dr. Garfinkel had opined that plaintiff was required to do so.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1). The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. Here, the ALJ's RFC determination did not account for all of plaintiff's limitations, as indicated by the opinions of Drs. Georgis, Garfinkel and Thornburg. Specifically, the RFC did not account for plaintiff's limitations in his ability to kneel, stoop, balance, crouch or crawl, or his limitation requiring that he be allowed to alternate standing and sitting every two hours.

Moreover, Drs. Georgis and Garfinkel were examining physicians.[2] An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. Thus, to the extent the ALJ may have disagreed with certain aspects of the opinion rendered by Dr. Georgis or Dr. Garfinkel, the ALJ was required to, at a minimum, offer specific and legitimate reasons supported by substantial evidence in the record for rejecting those examining physician opinion. Here, the ALJ did not offer any reason for failing to include all the limitations found by Drs. Georgis and Garfinkel in the ALJ's RFC determination.

---

[2] Dr. Thornburgh was a nonexamining physician. (Tr. at 356-61.) "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

Finally, not only did the ALJ's RFC determination fail to include all of the limitations indicated by the opinions of Drs. Georgis, Garfinkel and Thornburg, the ALJ also failed to include all of the limitations found by the doctors in the ALJ's hypothetical question posed to the Vocational Expert ("VE"). (Tr. at 55.) While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."); Palomares v. Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ("Since the analysis of RFC was flawed and not based on the whole record, the VE's testimony based thereon has no evidentiary value, and the ALJ's finding that Mr. Palomares can perform his previous work is not based on substantial evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.").

Here, because the ALJ failed to fully incorporate into his hypothetical question posed to the VE all of plaintiff's limitations as indicated by the opinions of Drs. Georgis, Garfinkel and Thornburg, that hypothetical question to the VE did not account for plaintiff's limitations in his ability to kneel, stoop, balance, crouch or crawl, or his limitation requiring that he allowed to alternate standing and sitting every two hours. Under those circumstances, the VE's testimony cannot constitute substantial evidence to support the ALJ's findings.

/////

/////

Accordingly, the undersigned finds that plaintiff is entitled to summary judgment in his favor with respect to his claim that the ALJ's treatment of the medical opinion evidence constituted legal error.

## II.  Step Five

Plaintiff also argues that the ALJ failed to identify jobs at step five of the sequential evaluation that plaintiff could perform given plaintiff's RFC.  Specifically, plaintiff argues that the ALJ found that plaintiff was limited to jobs requiring only "simple instructions" and included that limitation in his hypothetical question posed to the VE.  (Pl.'s MSJ (Doc. No. 22) at 3.)  In response to the ALJ's hypothetical question, the VE identified three jobs - cashier, stock clerk and storage rental clerk - that a person could perform with that limitation.  (Id.)  Two of those jobs, cashier and storage rental clerk, however, require an R3 reasoning level according to the Dictionary of Operational Titles ("DOT"), while the other job, that of stock clerk, requires an R2 reasoning level.  (Id. at 3-4.)  Plaintiff argues that a limitation to jobs requiring only simple instructions precludes him from working jobs requiring more than an R1 reasoning level.[3]  (Id. at 4.)  Moreover, plaintiff argues that in questioning the VE the ALJ failed to ask the VE to explain the conflict between the VE's testimony in response to the ALJ's hypothetical, which included

---

[3] The DOT's description of R1, R2 and R3 reasoning levels is as follows:

> 01 LEVEL REASONING DEVELOPMENT Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> 02 LEVEL REASONING DEVELOPMENT Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 03 LEVEL REASONING DEVELOPMENT Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Cortes v. Astrue, No. 1:12-cv-0236 AWI SAB, 2013 WL 440793, at *9 (E.D. Cal. Feb. 4, 2013).

the limitation to simple instructions, and the DOT's required reasoning level for those jobs identified by the VE.[4]  (Id. at 4.)  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("Thus, the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles.").

Among the circuit courts there is a split of authority as to whether a limitation to simple instructions is incompatible with a job requiring an R3 reasoning level.  Compare Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work could perform job requiring an R3 reasoning level), and Renfrow v. Astrue, 496 F.3d 918, 920-21 (8th Cir. 2007) (a claimant with an inability to do "complex technical work" was not precluded from unskilled jobs requiring an R3 reasoning level), with Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (a limitation to simple and routine tasks is inconsistent with jobs requiring an R3 reasoning level).  The Ninth Circuit has not addressed this issue.

It has been recognized, however, that District Courts throughout "this circuit have struggled to reconcile conflicts between the limitations described in a claimant's RFC and the job requirements described in the DOT."  Cortes v. Astrue, No. 1:12-cv-0236 AWI SAB, 2013 WL 440793, at *9 (E.D. Cal. Feb. 4, 2013).  Compare Meissl v. Barnhart, 403 F.Supp.2d 981, 984 (C.D. Cal. 2005) (ability to perform simple, repetitive instructions indicates a level of reasoning greater than R1), and O'Connor v. Astrue, No. C-09-1508 JCS, 2010 WL 3785433, at *11 (N.D. Cal. Sept. 27, 2010) ("district courts in this Circuit have concluded that level two positions in the DOT are consistent with an RFC for simple, repetitive labor."), with Gill v. Astrue, No. 3:11-cv-1350 BR, 2013 WL 145814, at *6-7 (D. Or. Jan. 14, 2013) (a limitation to simple and routine tasks is inconsistent with a job requiring R2 reasoning level), and Pope v. Astrue, No. CV 10-6019-PK, 2011 WL 3584802, at *17 (D. Or. May 20, 2011) (jobs requiring a R2 reasoning level are inconsistent with the limitation of being able to follow only simple instructions).

---

[4]  The undersigned notes that plaintiff's counsel at the May 5, 2010 administrative hearing also did not question the VE about the potential conflict between the VE's testimony and the job requirements as provided by the DOT.  (Tr. at 56.)

10

In any event, the majority of the judges of this court have concluded that a limitation to simple instructions does not preclude jobs requiring an R2 reasoning level. See Myers v. Colvin, No. 1:12-cv-0378 LJO GSA, 2013 WL 3481689, at *13-17 (E.D. Cal. July 10, 2013); Gonzales v. Colvin, No. 1:10-cv-1330 SKO, 2013 WL 1003631, at *5 (E.D. Cal. Mar. 13, 2013); Cortes v. Astrue, No. 1:12-cv-0236 AWI SAB, 2013 WL 440793, at *10-11 (E.D. Cal. Feb. 4, 2013); Eckard v. Astrue, No. 1:11cv0526 DLB, 2012 WL 669895, at *7-8 (E.D. Cal. Feb. 29, 2012); Pharris v. Astrue, No. 1:10-cv-1323 JLT, 2011 WL 3882508, at *12 (E.D. Cal. Sept. 2, 2011); Hernandez v. Astrue, No. 2:09-cv-0272 KJN, 2010 WL 3835791, at *5 (E.D. Cal. Sept. 29, 2010). The undersigned finds these opinions persuasive on the issue and therefore adopts their holdings. Accordingly, even if plaintiff's limitation to jobs requiring only simple instructions prohibited him from performing jobs requiring an R3 reasoning level, plaintiff could still perform jobs requiring an R2 reasoning level, such as the stock clerk job identified by the VE.[5] Accordingly, the ALJ's failure to inquire of the VE about the apparent conflict between the VE's testimony that plaintiff, limited to jobs requiring only simple instructions, could nonetheless perform the jobs of cashier and storage rental clerk despite the fact that the DOT's description of those jobs requires an R3 reasoning level, was harmless. See Bordbar v. Astrue, 475 Fed. Appx. 214, 215 (9th Cir. 2012) (any error harmless where VE testified plaintiff could performs jobs requiring R2 and R3 reasoning levels despite plaintiff's limitation to simple instructions because court had "no doubt" plaintiff could perform jobs requiring R2 reasoning level)[6]; Kellerman v. Astrue, No. C 11-4727 PJH, 2012 WL 3070781, at *18-19 (N.D. Cal. July 27, 2012) (limitation to "simple one or two step instructions" is consistent with a R2 reasoning level and the failure to obtain an explanation from the VE for conflict with DOT was harmless); Smith v. Astrue, No. CIV S-10-2941 GGH, 2011 WL 6749803, at *5 (E.D. Cal. Dec. 22, 2011) (where the VE identified jobs requiring R2 and R3 reasoning levels the court found limitation to simple tasks

---

[5] The VE testified that there were 23,000 stock clerk jobs in California. (Tr. at 56.) See Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478-80 (9th Cir. 1989) (concluding that 1,200 jobs in region was a significant number).

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  consistent with jobs requiring R2 reasoning level and the ALJ's failure to inquire about the

2  conflict between VE's testimony and DOT was harmless); Salas v. Astrue, No. 1:10-cv-0478

3  SKO, 2011 WL 2620370, at *7 (E.D. Cal. June 29, 2011) ("However, because the VE identified a

4  significant number of jobs that involve level 2 reasoning, any error in identifying work at level 3

5  reasoning was harmless error.").

6         Accordingly, the undersigned finds that plaintiff is not entitled to relief with

7  respect to this claim of error at step five of the sequential evaluation.

8  **III.    Borderline Age Case**

9         Plaintiff also argues that the ALJ erred by failing to apply the higher grid rule in a

10 borderline age case. Specifically, plaintiff argues that at the time of the ALJ's decision plaintiff

11 was only thirteen days from moving into a higher age category and, therefore, pursuant to the

12 agency's own regulations the ALJ should have considered the applicability of the higher age

13 category in light of plaintiff's limitations and found him disabled. (Pl.'s MSJ (Doc. No. 22) at 4-

14 5.)

15        The social security regulations distinguish between claimants in one of three age

16 categories: younger persons (those claimants under age 50), persons closely approaching

17 advanced age (those claimants age 50-54), and persons of advanced age (those claimants age 55

18 or older). 20 C.F.R. § 404.1563(c)-(e). However, where a claimant is within a few months of

19 reaching an older age category (a "borderline situation"), an ALJ has discretion, but is not

20 required, to use the older age category. Id. § 404.1563(b). Nonetheless, "there is no requirement

21 that the ALJ explain in her written decision why she did not use an older age category."

22 Lockwood v. Commissioner Social Sec. Admin., 616 F.3d 1068, 1070 (9th Cir. 2010).

23        In Lockwood, the claimant was one month and three days from turning 55 years of

24 age and becoming an individual of advanced age under the governing regulations. Id. at 1069-70.

25 The ALJ's decision, however, did not apply the advanced age category to the claimant and

26 instead treated the claimant as merely a person closely approaching advanced age. Id. at 1070.

27 Moreover, the ALJ did not explain in her decision why she did not apply the advanced age

28 category to the claimant. Id. The district court affirmed the ALJ's decision. Id. On appeal the

Ninth Circuit held that the ALJ did not err by failing to address in her written decision why she did not apply the higher age category. Id.

In this regard, the Ninth Circuit in Lockwood stated as follows:

> Here, the ALJ satisfied the requirement that she consider whether to use the older age category. The ALJ mentioned in her decision Lockwood's date of birth and found that Lockwood was 54 years old and, thus, a person closely approaching advanced age on the date of the ALJ's decision. Clearly the ALJ was aware that Lockwood was just shy of her 55th birthday, at which point she would become a person of advanced age. The ALJ also cited to 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation. Thus, the ALJ's decision shows that the ALJ knew she had discretion to use the older age category after evaluating the overall impact of all the factors of Lockwood's case. 20 C.F.R. § 404.1563(b). Finally, we are satisfied the ALJ did not apply the age categories mechanically because the ALJ evaluated the overall impact of all the factors of Lockwood's case when the ALJ relied on the testimony of a vocational expert before she found Lockwood was not disabled. Id.

Id. at 1071-72.

Here, as in Lockwood, the ALJ's decision acknowledged plaintiff's date of birth and noted that plaintiff was a person closely approaching advanced age. (Tr. at 27.) The ALJ also cited to 20 C.F.R. § 404.1563. (Id.) Finally, the ALJ also evaluated the overall impact of the facts of plaintiff's case in relying on the testimony of the VE before finding that plaintiff was not disabled. (Id. at 55-56.)

Plaintiff argues that Lockwood is distinguishable because here plaintiff has "additional vocational adversities" which, pursuant to "the POMS and HALLEX," require the ALJ to explain his decision to not apply the higher age category. (Pl.'s MSJ (Doc. No. 22) at 6.) However, the Ninth Circuit in Lockwood specifically noted that "[l]ike HALLEX, POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." Id. at 1073. Therefore, plaintiff's argument attempting to distinguish Lockwood is unpersuasive.

Accordingly, the undersigned concludes that the ALJ did not err by failing to explain in his decision why he used plaintiff's chronological age instead of applying the higher age category. See Lockwood, 616 F.3d at 1074; see also Bowie v. Commissioner of Social Sec.,

539 F.3d 395, 399 (6th Cir. 2008) ("Although ALJs are obligated by this text not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination."); Gyulnazaryan v. Astrue, No. 1:11-cv-1790 GSA, 2012 WL 5198504, at *10-11 (E.D. Cal. Oct. 19, 2012) ("As the Ninth Circuit found in Lockwood, the regulation merely promises claimants that the Social Security Administration will consider veering from the chronological-age default in borderline situations."); Borrelli v. Astrue, No. 1:10-cv-2396 SKO, 2012 WL 947343, at *19 (E.D. Cal. Mar. 20, 2012) ("Pursuant to Lockwood, the ALJ adequately considered Plaintiff's age and was not required to place Plaintiff in an older age category."); Schiel v. Astrue, No. 2:09-cv-1416 FCD EFB, 2010 WL 5115416, at *2 (E.D. Cal. Dec. 8, 2010) (Lockwood holds that written explanation as to why older age category did not apply "is not required."). But see Phillips v. Astrue, 671 F.3d 699, 706 (8th Cir. 2012) ("Nonetheless, to the extent Lockwood concluded these findings are sufficient to show the Commissioner considered the borderline situation, we disagree."); Daniels v. Apfel, 154 F.3d 1129, 1136 (10th Cir. 1998) ("Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence.").

For the reasons stated above, the undersigned finds that plaintiff is not entitled to relief with respect to his claim that the ALJ erred by failing to apply the higher grid rule in this "borderline age" case.

**IV.   Plaintiff's Mental Functioning**

Plaintiff next argues that the ALJ erred in his evaluation of plaintiff's mental functioning. Specifically, plaintiff argues that the ALJ improperly rejected plaintiff's multiple GAF scores at or below 50, a score which indicates serious impairment in occupational functioning. (Pl.'s MSJ (Doc. No. 22) at 8.)

A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See DIAGNOSTIC AND STATISTICAL MANUAL OF DISORDERS, at 30-31 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"). In this regard, "[a] GAF score is a rough estimate

14

of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011).

However, a GAF score "does not have a direct correlation to the severity requirements in the SSA's mental disorders listing." Gutierrez v. Astrue, No. 12-cv-1390 MEJ, 2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) (citations omitted). "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002). In this regard, "[t]he ALJ is not required to consider a GAF score, and a finding contrary to a GAF score is not erroneous where it is supported by substantial evidence." Paredes-Perez v. Astrue, Case No. 12-cv-1737 NC, 2013 WL 3989413, at *4 (N.D. Cal. Aug. 2, 2013).

Here the undersigned finds that the ALJ did not err by rejecting plaintiff's multiple GAF scores. See Pinegar v. Commissioner of Social Sec. Admin., 499 Fed. Appx. 666, 667 (9th Cir. 2012) ("Regarding Pinegar's Global Assessment of Functioning scores, the Commissioner has stated that such scores do not directly correlate with the requirements of Listing 12.04 for a finding of disability, and this Court has not found error when an ALJ does not consider them."); Doney v. Astrue, 485 Fed. Appx. 163, 165-66 (9th Cir. 2012) (no error for ALJ to disregard GAF scores from treating psychologist without setting forth clear and convincing reasons); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (failure to address GAF scores "does not constitute legal error.")[7]; see also Howard v. Colvin, No. EDCV 12-1633 OP, 2013 WL 1773995, at *8 (C.D. Cal. Apr. 25, 2013) ("With respect to the GAF scores, as a threshold matter, the Commissioner has no obligation to credit or even consider GAF scores in the disability determination."); Chavez v. Astrue, 699 F.Supp.2d 1125, 1135 (C.D. Cal. 2009) ("an ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient.").

/////

---

[7] See fn. 6, above.

Accordingly, the undersigned finds that plaintiff is not entitled to relief with respect to his claim that the ALJ erred in evaluating plaintiff's mental functioning by improperly rejecting plaintiff's multiple GAF scores.

## CONCLUSION

As noted above, the undersigned has found that plaintiff is entitled to summary judgment in his favor with respect to his claim that the ALJ's treatment of the medical opinion evidence constituted legal error. With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination can be made or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, this case should be remanded so that the ALJ can properly evaluate the opinions of Drs. Georgis, Garfinkel and Thornburg, determine plaintiff's RFC based on all the relevant evidence and, if applicable, determine if plaintiff has the residual functional capacity to perform any work. In making that determination, should the ALJ seek testimony from a VE, the ALJ should include all of plaintiff's limitations in the ALJ's hypothetical question posed to the VE. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. No. 22) be granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 34) be denied;

3. The Commissioner's decision be reversed; and

/////

4. This matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 22, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\bustos0229.f&rs.docx