1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DANIEL BUSTOS,                           No.  2:13-cv-0229 TLN DAD

12              Plaintiff,

13         v.                                  FINDINGS AND RECOMMENDATIONS

14    CAROLYN W. COLVIN, Commissioner
      of Social Security,

15

16              Defendant.

17

18              This social security action was submitted to the court without oral argument for

19    ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

20    judgment.  For the reasons explained below, it is recommended that plaintiff's motion be granted,

21    defendant's cross-motion be denied, the decision of the Commissioner of Social Security

22    (Commissioner) be reversed, and that the matter be remanded for further proceedings consistent

23    with these findings and recommendations.

24                                 PROCEDURAL BACKGROUND

25              On March 31, 2006, plaintiff filed an application for Disability Insurance Benefits

26    (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income

27    (SSI) under Title XVI of the Act, alleging disability beginning on July 1, 1988.  (Transcript

28    ("Tr.") at 215-17.)  Plaintiff's application for benefits was denied initially and upon

                                                 1

1    reconsideration. (Id. at 113-16.) A hearing was held before an Administrative Law Judge (ALJ)

2    on March 4, 2008. (Id. at 58.) Plaintiff was represented by counsel and testified at the

3    administrative hearing. In a decision issued on June 24, 2008, the ALJ found that plaintiff was

4    not disabled. (Id. at 117.)

5             However, on May 29, 2009, the Appeals Council granted review and remanded the

6    case back to the ALJ. (Id. at 133-35.) On May 5, 2010, the ALJ held a post remand hearing. (Id.

7    at 35.) Plaintiff was represented by counsel and testified at the post remand hearing. In a

8    decision issued on August 13, 2010, the ALJ again found that plaintiff was not disabled. (Id. at

9    14-33.)

10             The ALJ entered the following findings:

11             1. The claimant meets the insured status requirements of the Social
                Security Act through December 31, 2012.
12

13             2. The claimant has not engaged in substantial gainful activity
                since July 1, 1988, the alleged onset date (20 CFR 404.1571 et seq.,
                and 416.971 et seq.).
14

15             3. The claimant has the following severe impairments:
                degenerative disks, lumbar spine; obesity; diabetes; depression;
                history of alcohol abuse, in remission (20 CFR 404.1520(c) and
16             416.920(c)).

17             4. The claimant does not have an impairment or combination of
                impairments that meets or medically equals one of the listed
18             impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
                404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
19             416.926).

20             5. After careful consideration of the entire record, I find that the
                claimant has the residual functional capacity to perform light work
21             as defined in 20 CFR 404.1567(b) and 416.967(b) except lift 20
                pounds occasionally and 10 pounds frequently; capable of standing,
22             sitting, and walking for 6 hours each in a work day; cannot climb
                ladders/ropes/scaffolding; cannot work at heights or around
23             hazardous, moving machinery; should not have concentrated
                exposure to dust, fumes, smoke, or other respiratory irritants; and is
24             limited to work involving simple instructions.

25             6. The claimant has no past relevant work (20 CFR 404.1565 and
                416.965).
26

27             7. The claimant was born on August 23, 1955 and was 32 years
                old, which is defined as a "younger individual age 18-49," on the
                alleged disability onset date, July 1, 1988. The claimant was 49
28             years old as of the previous decision of May 12, 2005 (Exhibit 2A),

and was still a younger individual.  The claimant subsequently
changed age category to "closely approaching advanced age" on
August 22, 2005 (20 CFR 404.1563 and 416.963).

8.  The claimant has "limited" education and is able to
communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant
does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience,
and residual functional capacity, there are jobs that exist in
significant numbers in the national economy that the claimant can
perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the
Social Security Act, from July 1, 1988, through the date of this
decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 20-28.)

On February 29, 2012, the Appeals Council denied plaintiff's request for review of

the ALJ's decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g)

by filing the complaint in this action on May 2, 2012.

LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the

findings of fact are supported by substantial evidence in the record as a whole and the proper

legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

(9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are

conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

(1971)).

A reviewing court must consider the record as a whole, weighing both the

evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

1    supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

2    substantial evidence supports the administrative findings, or if there is conflicting evidence

3    supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

4    Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

5    improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

6    1335, 1338 (9th Cir. 1988).

7              In determining whether or not a claimant is disabled, the ALJ should apply the

8    five-step sequential evaluation process established under Title 20 of the Code of Federal

9    Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

10   The five-step process has been summarized as follows:

11
               Step one:  Is the claimant engaging in substantial gainful activity?
               If so, the claimant is found not disabled.  If not, proceed to step
12             two.

13             Step two:  Does the claimant have a "severe" impairment?  If so,
               proceed to step three.  If not, then a finding of not disabled is
14             appropriate.

15             Step three:  Does the claimant's impairment or combination of
               impairments meet or equal an impairment listed in 20 C.F.R., Pt.
16             404, Subpt. P, App. 1?  If so, the claimant is automatically
               determined disabled.  If not, proceed to step four.
17
               Step four:  Is the claimant capable of performing his past work?  If
18             so, the claimant is not disabled.  If not, proceed to step five.

19             Step five:  Does the claimant have the residual functional capacity
               to perform any other work?  If so, the claimant is not disabled.  If
20             not, the claimant is disabled.

21   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

22             The claimant bears the burden of proof in the first four steps of the sequential

23   evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

24   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

25   (9th Cir. 1999).

26                                      APPLICATION

27             In his pending motion plaintiff argues that the ALJ committed the following four

28   principal errors in finding him not disabled:  (1) the ALJ erred with respect to evaluating the

                                            4

1  medical opinion evidence; (2) the ALJ erred at step five of the sequential evaluation by failing to

2  identify jobs that plaintiff could perform; (3) the ALJ erred in failing to apply the higher grid rule

3  in a borderline age case; and (4) the ALJ erred with respect to evaluating plaintiff's mental

4  functioning.

5  **I.      <u>Medical Opinion Evidence</u>**

6          Plaintiff argues that the ALJ erred with respect to his treatment of the medical

7  opinion evidence.  (Pl.'s MSJ (Doc. No. 22) at 6-8.[1])  Specifically, plaintiff argues that the ALJ

8  tacitly rejected some of the limitations indicated by the medical opinions of Drs. Theodore

9  Georgis, Joseph Garfinkel and J. E. Thornburg.  (<u>Id.</u>)

10         With respect to Dr. Georgis, the ALJ's decision reads as follows:

11  A comprehensive Orthopedic Evaluation and Medical Source
    Statement of Ability to Do Work-Related Activities (Physical) were
12  completed by Theodore Georgis, Jr., M.D., and dated September
    14, 2009 (Exhibit 14F).  The claimant was diagnosed with chronic
13  low back pain and probable underlying degenerative disc disease,
    without radiculopathy (Exhibit 14F10).  Dr. Georgis provided the
14  following functional assessment:

15         From my assessment of this claimant, I do feel his
           condition will impose limitations for 12 continuous
16         months.

17         Maximum standing and walking capacity, up to six
           hours.  Maximum sitting capacity, up to six hours.
18
           Assistive devices, the claimant uses a single point
19         cane, which is not medically necessary based upon
           my objective exam findings.
20
           Maximum lifting and carrying capacity, 20 pounds
21         occasional and 10 pounds frequently.

22         Postural limitations, limited to occasional climbing,
           balancing,   stooping,   kneeling,   crouching   and
23         crawling, secondary to his back condition.

24         Manipulative limitations, none.

25         Workplace environmental limitations, none.

26         (Exhibit 14F10-11, see also 14F1-6).  I give some weight to these

27
    _____
    [1]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
28  system and not to page numbers assigned by the parties.

findings because they were the result of an in-person evaluation and Dr. Georgis is orthopedics board certified.  I find, however, that the claimant has more postural and environmental restrictions than indicated by Dr. Georgis.

(Id. at 26-27.)

With respect to Dr. Garfinkle's opinion, the ALJ stated in his decision the following:

A Complete Internal Medicine Evaluation was performed by Joseph Garfinkel, M.D., and dated August 10, 2006 (Exhibit 3F).  The claimant's chief complaints were back injury, diabetes, asthma, high blood pressure, and sleep apnea (Exhibit 3F1).  The evaluation noted impressions of lower back injury with radiculopathy; diabetes mellitus type II; asthma, stable; hypertension, poor control (claimant was advised to see his physician about his blood pressure); sleep apnea; and anxiety and depression (which should be evaluated by a psychologist or psychiatrist) (Exhibit 3F5).  Dr. Garfinkel provided the following medical source statement:

> The claimant can lift 20 pounds occasionally and 10 pounds frequently.  He can stand or walk six hours in an 8-hour day.  He can sit six hours in an eight-hour day.  He must periodically alternate standing and sitting to relieve pain and discomfort every two hours.  He can occasionally climb, stoop, kneel or crouch.

(Exhibit 3F5).  I give some weight to these findings because they are the result of an in-person examination with physical testing and are contained in a thorough and detailed report.  In addition, Dr. Garfinkel is board eligible, internal medicine.

(Id. at 25.)

Finally, with respect to Dr. Thornburg's opinion rendered September 11, 2006, the ALJ's opinion acknowledged that on September 11, 2006, a "Physical Residual Functional Capacity Assessment was prepared by a Social Security Administration medical consultant," which determined that, among other limitations, plaintiff could "occasionally . . . balance, stoop, kneel, crouch and crawl . . ." (Id.)  The ALJ gave "some weight" to that opinion, but found "that the claimant has more postural and environmental restrictions than indicated" by Dr. Thornburg. (Id. at 25-26.)

Despite the fact that the ALJ's decision did not reject any of the limitations found by the opinions of Drs. Georgis, Garfinkel or Thornburg, the ALJ's Residual Functional Capacity

1    ("RFC") determination did not account for all of the limitations indicated by the doctors'

2    opinions.  Specifically, the ALJ's RFC determination set no limitation on plaintiff's ability with

3    respect to kneeling, stooping, balancing, crouching or crawling, despite the fact that Dr. Georgis

4    and Dr. Thornburg both opined that plaintiff was limited to only occasional kneeling, stooping,

5    balancing, crouching and crawling, and that Dr. Garfinkel opined that plaintiff could only

6    occasionally stoop, kneel or crouch.  Moreover, the ALJ's RFC determination did not include a

7    limitation reflecting that plaintiff needed to alternate standing and sitting every two hours, despite

8    the fact that Dr. Garfinkel had opined that plaintiff was required to do so.

9            A claimant's RFC is "the most [the claimant] can still do despite [his or her]

10   limitations."  20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1).  The assessment of RFC must be

11   "based on all the relevant evidence in [the claimant's] case record."  Id.  Here, the ALJ's RFC

12   determination did not account for all of plaintiff's limitations, as indicated by the opinions of Drs.

13   Georgis, Garfinkel and Thornburg.  Specifically, the RFC did not account for plaintiff's

14   limitations in his ability to kneel, stoop, balance, crouch or crawl, or his limitation requiring that

15   he be allowed to alternate standing and sitting every two hours.

16           Moreover, Drs. Georgis and Garfinkel were examining physicians.[2]  An examining

17   physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and

18   convincing reasons, and when an examining physician's opinion is controverted by another

19   doctor's opinion, the examining physician's opinion may be rejected only for specific and

20   legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.

21   Thus, to the extent the ALJ may have disagreed with certain aspects of the opinion rendered by

22   Dr. Georgis or Dr. Garfinkel, the ALJ was required to, at a minimum, offer specific and

23   legitimate reasons supported by substantial evidence in the record for rejecting those examining

24   physician opinion.  Here, the ALJ did not offer any reason for failing to include all the limitations

25   found by Drs. Georgis and Garfinkel in the ALJ's RFC determination.

26   _____

27   [2]  Dr. Thornburgh was a nonexamining physician.  (Tr. at 356-61.)  "[T]he findings of a
     nontreating, nonexamining physician can amount to substantial evidence, so long as other
     evidence in the record supports those findings."  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.

28   1996).

7

1    Finally, not only did the ALJ's RFC determination fail to include all of the

2    limitations indicated by the opinions of Drs. Georgis, Garfinkel and Thornburg, the ALJ also

3    failed to include all of the limitations found by the doctors in the ALJ's hypothetical question

4    posed to the Vocational Expert ("VE").  (Tr. at 55.)  While an ALJ may pose a range of

5    hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical

6    question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that

7    is predicated on the ALJ's final RFC assessment, must account for all of the limitations and

8    restrictions of the particular claimant.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228

9    (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then

10   the expert's testimony has no evidentiary value to support a finding that the claimant can perform

11   jobs in the national economy."  Id. (citation and quotation marks omitted).  See also Taylor v.

12   Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the

13   hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's

14   testimony cannot constitute substantial evidence to support the ALJ's findings."); Palomares v.

15   Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ("Since the analysis of RFC was flawed and not

16   based on the whole record, the VE's testimony based thereon has no evidentiary value, and the

17   ALJ's finding that Mr. Palomares can perform his previous work is not based on substantial

18   evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must

19   be considered very carefully to determine its impact on the size of the remaining occupational

20   base of a person who is otherwise found functionally capable of light work.").

21   Here, because the ALJ failed to fully incorporate into his hypothetical question

22   posed to the VE all of plaintiff's limitations as indicated by the opinions of Drs. Georgis,

23   Garfinkel and Thornburg, that hypothetical question to the VE did not account for plaintiff's

24   limitations in his ability to kneel, stoop, balance, crouch or crawl, or his limitation requiring that

25   he allowed to alternate standing and sitting every two hours.  Under those circumstances, the

26   VE's testimony cannot constitute substantial evidence to support the ALJ's findings.

27   /////

28   /////

8

1    Accordingly, the undersigned finds that plaintiff is entitled to summary judgment

2    in his favor with respect to his claim that the ALJ's treatment of the medical opinion evidence

3    constituted legal error.

4    **II.    Step Five**

5    Plaintiff also argues that the ALJ failed to identify jobs at step five of the

6    sequential evaluation that plaintiff could perform given plaintiff's RFC.  Specifically, plaintiff

7    argues that the ALJ found that plaintiff was limited to jobs requiring only "simple instructions"

8    and included that limitation in his hypothetical question posed to the VE.  (Pl.'s MSJ (Doc. No.

9    22) at 3.)  In response to the ALJ's hypothetical question, the VE identified three jobs - cashier,

10   stock clerk and storage rental clerk - that a person could perform with that limitation.  (Id.)  Two

11   of those jobs, cashier and storage rental clerk, however, require an R3 reasoning level according

12   to the Dictionary of Operational Titles ("DOT"), while the other job, that of stock clerk, requires

13   an R2 reasoning level.  (Id. at 3-4.)  Plaintiff argues that a limitation to jobs requiring only simple

14   instructions precludes him from working jobs requiring more than an R1 reasoning level.[3]  (Id. at

15   4.)  Moreover, plaintiff argues that in questioning the VE the ALJ failed to ask the VE to explain

16   the conflict between the VE's testimony in response to the ALJ's hypothetical, which included

17   _____
     [3]   The DOT's description of R1, R2 and R3 reasoning levels is as follows:

18
                  01 LEVEL REASONING DEVELOPMENT Apply commonsense
19                understanding to carry out simple one-or two-step instructions.
                  Deal with standardized situations with occasional or no variables in
20                or from these situations encountered on the job.

21
                  02 LEVEL REASONING DEVELOPMENT Apply commonsense
22                understanding to carry out detailed but uninvolved written or oral
                  instructions.  Deal with problems involving a few concrete
23                variables in or from standardized situations.
24

25                03 LEVEL REASONING DEVELOPMENT Apply commonsense
                  understanding to carry out instructions furnished in written, oral, or
26                diagrammatic form.  Deal with problems involving several concrete
                  variables in or from standardized situations.
27

28   Cortes v. Astrue, No. 1:12-cv-0236 AWI SAB, 2013 WL 440793, at *9 (E.D. Cal. Feb. 4, 2013).

1    the limitation to simple instructions, and the DOT's required reasoning level for those jobs

2    identified by the VE.[4]  (Id. at 4.)  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007)

3    ("Thus, the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then

4    determine whether the vocational expert's explanation for the conflict is reasonable and whether a

5    basis exists for relying on the expert rather than the Dictionary of Occupational Titles.").

6              Among the circuit courts there is a split of authority as to whether a limitation to

7    simple instructions is incompatible with a job requiring an R3 reasoning level.  Compare Terry v.

8    Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work could perform job

9    requiring an R3 reasoning level), and Renfrow v. Astrue, 496 F.3d 918, 920-21 (8th Cir. 2007) (a

10   claimant with an inability to do "complex technical work" was not precluded from unskilled jobs

11   requiring an R3 reasoning level), with Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)

12   (a limitation to simple and routine tasks is inconsistent with jobs requiring an R3 reasoning level).

13   The Ninth Circuit has not addressed this issue.

14             It has been recognized, however, that District Courts throughout "this circuit have

15   struggled to reconcile conflicts between the limitations described in a claimant's RFC and the job

16   requirements described in the DOT."  Cortes v. Astrue, No. 1:12-cv-0236 AWI SAB, 2013 WL

17   440793, at *9 (E.D. Cal. Feb. 4, 2013).  Compare Meissl v. Barnhart, 403 F.Supp.2d 981, 984

18   (C.D. Cal. 2005) (ability to perform simple, repetitive instructions indicates a level of reasoning

19   greater than R1), and O'Connor v. Astrue, No. C-09-1508 JCS, 2010 WL 3785433, at *11 (N.D.

20   Cal. Sept. 27, 2010) ("district courts in this Circuit have concluded that level two positions in the

21   DOT are consistent with an RFC for simple, repetitive labor."), with Gill v. Astrue, No. 3:11-cv-

22   1350 BR, 2013 WL 145814, at *6-7 (D. Or. Jan. 14, 2013) (a limitation to simple and routine

23   tasks is inconsistent with a job requiring R2 reasoning level), and Pope v. Astrue, No. CV 10-

24   6019-PK, 2011 WL 3584802, at *17 (D. Or. May 20, 2011) (jobs requiring a R2 reasoning level

25   are inconsistent with the limitation of being able to follow only simple instructions).

26

27   _____
     [4]  The undersigned notes that plaintiff's counsel at the May 5, 2010 administrative hearing also
     did not question the VE about the potential conflict between the VE's testimony and the job
28   requirements as provided by the DOT.  (Tr. at 56.)

1    In any event, the majority of the judges of this court have concluded that a

2    limitation to simple instructions does not preclude jobs requiring an R2 reasoning level. See

3    Myers v. Colvin, No. 1:12-cv-0378 LJO GSA, 2013 WL 3481689, at *13-17 (E.D. Cal. July 10,

4    2013); Gonzales v. Colvin, No. 1:10-cv-1330 SKO, 2013 WL 1003631, at *5 (E.D. Cal. Mar. 13,

5    2013); Cortes v. Astrue, No. 1:12-cv-0236 AWI SAB, 2013 WL 440793, at *10-11 (E.D. Cal.

6    Feb. 4, 2013); Eckard v. Astrue, No. 1:11cv0526 DLB, 2012 WL 669895, at *7-8 (E.D. Cal. Feb.

7    29, 2012); Pharris v. Astrue, No. 1:10-cv-1323 JLT, 2011 WL 3882508, at *12 (E.D. Cal. Sept. 2,

8    2011); Hernandez v. Astrue, No. 2:09-cv-0272 KJN, 2010 WL 3835791, at *5 (E.D. Cal. Sept.

9    29, 2010). The undersigned finds these opinions persuasive on the issue and therefore adopts

10   their holdings. Accordingly, even if plaintiff's limitation to jobs requiring only simple

11   instructions prohibited him from performing jobs requiring an R3 reasoning level, plaintiff could

12   still perform jobs requiring an R2 reasoning level, such as the stock clerk job identified by the

13   VE.[5] Accordingly, the ALJ's failure to inquire of the VE about the apparent conflict between the

14   VE's testimony that plaintiff, limited to jobs requiring only simple instructions, could nonetheless

15   perform the jobs of cashier and storage rental clerk despite the fact that the DOT's description of

16   those jobs requires an R3 reasoning level, was harmless. See Bordbar v. Astrue, 475 Fed. Appx.

17   214, 215 (9th Cir. 2012) (any error harmless where VE testified plaintiff could performs jobs

18   requiring R2 and R3 reasoning levels despite plaintiff's limitation to simple instructions because

19   court had "no doubt" plaintiff could perform jobs requiring R2 reasoning level)[6]; Kellerman v.

20   Astrue, No. C 11-4727 PJH, 2012 WL 3070781, at *18-19 (N.D. Cal. July 27, 2012) (limitation

21   to "simple one or two step instructions" is consistent with a R2 reasoning level and the failure to

22   obtain an explanation from the VE for conflict with DOT was harmless); Smith v. Astrue, No.

23   CIV S-10-2941 GGH, 2011 WL 6749803, at *5 (E.D. Cal. Dec. 22, 2011) (where the VE

24   identified jobs requiring R2 and R3 reasoning levels the court found limitation to simple tasks

25   [5] The VE testified that there were 23,000 stock clerk jobs in California. (Tr. at 56.) See Barker

26   v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478-80 (9th Cir. 1989) (concluding that
     1,200 jobs in region was a significant number).

27

28   [6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
     36-3(b).

1  consistent with jobs requiring R2 reasoning level and the ALJ's failure to inquire about the

2  conflict between VE's testimony and DOT was harmless); Salas v. Astrue, No. 1:10-cv-0478

3  SKO, 2011 WL 2620370, at *7 (E.D. Cal. June 29, 2011) ("However, because the VE identified a

4  significant number of jobs that involve level 2 reasoning, any error in identifying work at level 3

5  reasoning was harmless error.").

6          Accordingly, the undersigned finds that plaintiff is not entitled to relief with

7  respect to this claim of error at step five of the sequential evaluation.

8  **III.      Borderline Age Case**

9          Plaintiff also argues that the ALJ erred by failing to apply the higher grid rule in a

10  borderline age case.  Specifically, plaintiff argues that at the time of the ALJ's decision plaintiff

11  was only thirteen days from moving into a higher age category and, therefore, pursuant to the

12  agency's own regulations the ALJ should have considered the applicability of the higher age

13  category in light of plaintiff's limitations and found him disabled.  (Pl.'s MSJ (Doc. No. 22) at 4-

14  5.)

15          The social security regulations distinguish between claimants in one of three age

16  categories: younger persons (those claimants under age 50), persons closely approaching

17  advanced age (those claimants age 50-54), and persons of advanced age (those claimants age 55

18  or older).  20 C.F.R. § 404.1563(c)-(e).  However, where a claimant is within a few months of

19  reaching an older age category (a "borderline situation"), an ALJ has discretion, but is not

20  required, to use the older age category.  Id. § 404.1563(b).  Nonetheless, "there is no requirement

21  that the ALJ explain in her written decision why she did not use an older age category."

22  Lockwood v. Commissioner Social Sec. Admin., 616 F.3d 1068, 1070 (9th Cir. 2010).

23          In Lockwood, the claimant was one month and three days from turning 55 years of

24  age and becoming an individual of advanced age under the governing regulations.  Id. at 1069-70.

25  The ALJ's decision, however, did not apply the advanced age category to the claimant and

26  instead treated the claimant as merely a person closely approaching advanced age.  Id. at 1070.

27  Moreover, the ALJ did not explain in her decision why she did not apply the advanced age

28  category to the claimant.  Id.  The district court affirmed the ALJ's decision.  Id.  On appeal the

1   Ninth Circuit held that the ALJ did not err by failing to address in her written decision why she

2   did not apply the higher age category.  Id.

3               In this regard, the Ninth Circuit in Lockwood stated as follows:

4               Here, the ALJ satisfied the requirement that she consider whether to
                use the older age category.  The ALJ mentioned in her decision
5               Lockwood's date of birth and found that Lockwood was 54 years
                old and, thus, a person closely approaching advanced age on the
6               date of the ALJ's decision.  Clearly the ALJ was aware that
                Lockwood was just shy of her 55th birthday, at which point she
7               would become a person of advanced age.  The ALJ also cited to 20
                C.F.R. § 404.1563, which prohibited her from applying the age
8               categories mechanically in a borderline situation.  Thus, the ALJ's
                decision shows that the ALJ knew she had discretion to use the
9               older age category after evaluating the overall impact of all the
                factors of Lockwood's case.  20 C.F.R. § 404.1563(b).  Finally, we
10              are satisfied the ALJ did not apply the age categories mechanically
                because the ALJ evaluated the overall impact of all the factors of
11              Lockwood's case when the ALJ relied on the testimony of a
                vocational expert before she found Lockwood was not disabled.  Id.
12

13  Id. at 1071-72.

14              Here, as in Lockwood, the ALJ's decision acknowledged plaintiff's date of birth

15  and noted that plaintiff was a person closely approaching advanced age.  (Tr. at 27.)  The ALJ

16  also cited to 20 C.F.R. § 404.1563.  (Id.)  Finally, the ALJ also evaluated the overall impact of the

17  facts of plaintiff's case in relying on the testimony of the VE before finding that plaintiff was not

18  disabled.  (Id. at 55-56.)

19              Plaintiff argues that Lockwood is distinguishable because here plaintiff has

20  "additional vocational adversities" which, pursuant to "the POMS and HALLEX," require the

21  ALJ to explain his decision to not apply the higher age category.  (Pl.'s MSJ (Doc. No. 22) at 6.)

22  However, the Ninth Circuit in Lockwood specifically noted that "[l]ike HALLEX, POMS

23  constitutes an agency interpretation that does not impose judicially enforceable duties on either

24  this court or the ALJ."  Id. at 1073.  Therefore, plaintiff's argument attempting to distinguish

25  Lockwood is unpersuasive.

26              Accordingly, the undersigned concludes that the ALJ did not err by failing to

27  explain in his decision why he used plaintiff's chronological age instead of applying the higher

28  age category.  See Lockwood, 616 F.3d at 1074; see also Bowie v. Commissioner of Social Sec.,

13

1    539 F.3d 395, 399 (6th Cir. 2008) ("Although ALJs are obligated by this text not to apply the age

2    categories mechanically and to consider whether use of an older age category would be

3    appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's

4    borderline age situation in his opinion or explain his thought process in arriving at a particular

5    age-category determination."); Gyulnazaryan v. Astrue, No. 1:11-cv-1790 GSA, 2012 WL

6    5198504, at *10-11 (E.D. Cal. Oct. 19, 2012) ("As the Ninth Circuit found in Lockwood, the

7    regulation merely promises claimants that the Social Security Administration will consider

8    veering from the chronological-age default in borderline situations."); Borrelli v. Astrue, No.

9    1:10-cv-2396 SKO, 2012 WL 947343, at *19 (E.D. Cal. Mar. 20, 2012) ("Pursuant to Lockwood,

10   the ALJ adequately considered Plaintiff's age and was not required to place Plaintiff in an older

11   age category."); Schiel v. Astrue, No. 2:09-cv-1416 FCD EFB, 2010 WL 5115416, at *2 (E.D.

12   Cal. Dec. 8, 2010) (Lockwood holds that written explanation as to why older age category did not

13   apply "is not required.").  But see Phillips v. Astrue, 671 F.3d 699, 706 (8th Cir. 2012)

14   ("Nonetheless, to the extent Lockwood concluded these findings are sufficient to show the

15   Commissioner considered the borderline situation, we disagree."); Daniels v. Apfel, 154 F.3d

16   1129, 1136 (10th Cir. 1998) ("Like any factual issue, a finding regarding the appropriate age

17   category in which to place a claimant must be supported by substantial evidence.").

18          For the reasons stated above, the undersigned finds that plaintiff is not entitled to

19   relief with respect to his claim that the ALJ erred by failing to apply the higher grid rule in this

20   "borderline age" case.

21   **IV.    Plaintiff's Mental Functioning**

22          Plaintiff next argues that the ALJ erred in his evaluation of plaintiff's mental

23   functioning.  Specifically, plaintiff argues that the ALJ improperly rejected plaintiff's multiple

24   GAF scores at or below 50, a score which indicates serious impairment in occupational

25   functioning.  (Pl.'s MSJ (Doc. No. 22) at 8.)

26          A GAF score represents a present rating of overall psychological functioning on a

27   scale of 0 to 100.  See DIAGNOSTIC AND STATISTICAL MANUAL OF DISORDERS, at 30-31 (Am.

28   Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV").  In this regard, "[a] GAF score is a rough estimate

14

1    of an individual's psychological, social, and occupational functioning used to reflect the

2    individual's need for treatment."  Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723

3    (9th Cir. 2011).

4              However, a GAF score "does not have a direct correlation to the severity

5    requirements in the SSA's mental disorders listing."  Gutierrez v. Astrue, No. 12-cv-1390 MEJ,

6    2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) (citations omitted).  "While a GAF score may

7    be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's

8    accuracy."  Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002).  In this

9    regard, "[t]he ALJ is not required to consider a GAF score, and a finding contrary to a GAF score

10   is not erroneous where it is supported by substantial evidence."  Paredes-Perez v. Astrue, Case

11   No. 12-cv-1737 NC, 2013 WL 3989413, at *4 (N.D. Cal. Aug. 2, 2013).

12             Here the undersigned finds that the ALJ did not err by rejecting plaintiff's multiple

13   GAF scores.  See Pinegar v. Commissioner of Social Sec. Admin., 499 Fed. Appx. 666, 667 (9th

14   Cir. 2012) ("Regarding Pinegar's Global Assessment of Functioning scores, the Commissioner

15   has stated that such scores do not directly correlate with the requirements of Listing 12.04 for a

16   finding of disability, and this Court has not found error when an ALJ does not consider them.");

17   Doney v. Astrue, 485 Fed. Appx. 163, 165-66 (9th Cir. 2012) (no error for ALJ to disregard GAF

18   scores from treating psychologist without setting forth clear and convincing reasons); McFarland

19   v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (failure to address GAF scores "does not

20   constitute legal error.")[7]; see also Howard v. Colvin, No. EDCV 12-1633 OP, 2013 WL 1773995,

21   at *8 (C.D. Cal. Apr. 25, 2013) ("With respect to the GAF scores, as a threshold matter, the

22   Commissioner has no obligation to credit or even consider GAF scores in the disability

23   determination."); Chavez v. Astrue, 699 F.Supp.2d 1125, 1135 (C.D. Cal. 2009) ("an ALJ is not

24   required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure

25   to mention a GAF score does not render his assessment of a claimant's RFC deficient.").

26   /////

27

28   [7]  See fn. 6, above.

15

1    Accordingly, the undersigned finds that plaintiff is not entitled to relief with

2    respect to his claim that the ALJ erred in evaluating plaintiff's mental functioning by improperly

3    rejecting plaintiff's multiple GAF scores.

4                                                   CONCLUSION

5    As noted above, the undersigned has found that plaintiff is entitled to summary

6    judgment in his favor with respect to his claim that the ALJ's treatment of the medical opinion

7    evidence constituted legal error.  With error established, the court has the discretion to remand or

8    reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no

9    useful purpose would be served by further proceedings, or where the record has been fully

10   developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.

11   See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  However, where there are

12   outstanding issues that must be resolved before a determination can be made or it is not clear

13   from the record that the ALJ would be required to find plaintiff disabled if all the evidence were

14   properly evaluated, remand is appropriate.  Id. at 594.

15   Here, this case should be remanded so that the ALJ can properly evaluate the

16   opinions of Drs. Georgis, Garfinkel and Thornburg, determine plaintiff's RFC based on all the

17   relevant evidence and, if applicable, determine if plaintiff has the residual functional capacity to

18   perform any work.  In making that determination, should the ALJ seek testimony from a VE, the

19   ALJ should include all of plaintiff's limitations in the ALJ's hypothetical question posed to the

20   VE.  See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of

21   the vocational expert has failed to address a claimant's limitations as established by improperly

22   discredited evidence, we consistently have remanded for further proceedings rather than payment

23   of benefits.").

24   Accordingly, IT IS HEREBY RECOMMENDED that:

25        1. Plaintiff's motion for summary judgment (Doc. No. 22) be granted;

26        2. Defendant's cross-motion for summary judgment (Doc. No. 34) be denied;

27        3. The Commissioner's decision be reversed; and

28   /////

1           4.  This matter be remanded for further proceedings consistent with these findings

2  and recommendations.

3          These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5  days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8  shall be served and filed within seven days after service of the objections.  The parties are advised

9  that failure to file objections within the specified time may waive the right to appeal the District

10  Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  Dated:  August 22, 2013

12

13                            DALE A. DROZD

14                            UNITED STATES MAGISTRATE JUDGE

15  DAD:6
Ddad1\orders.soc sec\bustos0229.f&rs.docx

16

17

18

19

20

21

22

23

24

25

26

27

28